UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE NELSON,

        Plaintiff,                                Hon. Paul L. Maloney

v.                                                 Case No. 1:18-cv-660

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

1

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

2

## PROCEDURAL POSTURE

Plaintiff was 38 years of age on her alleged disability onset date. (PageID.207). She successfully completed high school and worked previously as a sterilizer of medical equipment. (PageID.56). Plaintiff applied for benefits on March 26, 2015, alleging that she had been disabled since September 3, 2013, due to fibromyalgia, back pain, chronic pain, depression, anxiety, and mood disorder. (PageID.207-13, 230).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.102-204). On July 12, 2017, Plaintiff appeared before ALJ Nicholas Ohanesian with testimony being offered by Plaintiff and a vocational expert. (PageID.63-100). In a written decision dated November 2, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.46-58). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.30-34). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

3

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) fibromyalgia; (2) status-post left common iliac vein occlusion; (3) obesity; (4) depressive disorder; (5) major depressive disorder; (6) chronic pain syndrome; (7) degenerative disc disease [status-post fusion at L4-5]; (8)

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

4

bi-polar disorder; (9) generalized anxiety disorder; (10) an eating disorder; and (11) borderline personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.49-51).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) she can occasionally balance, stoop, kneel, crouch, and crawl; (3) she can tolerate frequent exposure to extreme cold, wetness, and vibration; (4) she can tolerate occasional exposure to hazards; and (5) she can receive, comprehend, and execute simple, routine tasks.   (PageID.51).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.   *See Richardson*, 735 F.2d at 964.   While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).   This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.   *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding.   Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 275,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.92-96). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## I. Medical Evidence

In addition to the testimony presented at the administrative hearing, the administrative record contains copies of Plaintiff's statements and medical treatment records. The ALJ described this evidence as follows:

> The claimant described a typical day as waking up at 7:00 AM. She said she has no problems with hygiene tasks and she prepares a simple breakfast for herself. The claimant stated she takes care of two animals, a dog and cat, gets the kids up, and watches the television news in the morning in a recliner. She said she has a small lunch and gets household chores done in intervals; these chores consist of laundry, dishes, and straightening up things. She vacuums weekly. The claimant said that sometimes she prepares a simple meal for dinner for the household, (or everyone gets his or her own dinner). She rests in the recliner in the evenings and goes to bed at 10:00 PM. She said she sleeps through the night (with the use of sleep aid medications). The claimant stated she and her daughter do the grocery shopping every couple of weeks. The claimant said it is frustrating for her to read.
>
> \*          \*          \*
>
> On July 22, 2013, the claimant was 64 inches tall and weighed 179 pounds for a body-mass index (BMI) of 30.72. The lungs were clear to auscultation. The assessment consisted of myalgia and myositis, unspecified, fibromyalgia, and back pain. Current medications included Paxil, Norco, Flexeril, and Prednisone (Exhibit 2F/43-46). In October 2013, the claimant stated that the fibromyalgia had begun three years ago. In the instant case, I considered the effects of

fibromyalgia at steps two through five of the aforementioned sequential evaluation. The presence of fibromyalgia supports a residual functional capacity of only sedentary work activities [SSR 12-2p].

In October 2013, the claimant was 64 inches tall and weighed 184 pounds for a BMI of 31.58 (Exhibit 2F/34). The record of medical treatment does not document significant treatment of obesity. I considered its effects in the evaluation of the residual functional capacity and at steps two through five of the sequential evaluation [SSR 02-1p].

On September 24, 2014, the claimant reported fibromyalgia-related pain from the waist down. She described the pain as aching, burning, and radiating. She stated Ultram was not working and that she was taking Norco and Flexeril. She rated the pain at an eight (on a ten-point scale) and she could stand for only about 20 minutes daily (Exhibit 2F/20). On October 6, 2014, the dosage of Norco was decreased to one or two daily with instructions that the claimant could take four on a bad day. The claimant began taking Morphine (EX) once daily (Exhibit 2F/16-18).

At the August 1, 2015 consultative physical examination, the claimant had no tender points associated with fibromyalgia, no long tract signs, and no difficulties with gait or station. There was good motor strength, sensation, and reflexes. The claimant reported that a pain treatment doctor had not treated her and she had not received trigger point injections or steroid injections. She stated physical therapy made the fibromyalgia worse. The claimant was five feet and four inches tall with a weight of 191 pounds. Grip strength was full at 5/5. The claimant was oriented times three and in no acute distress. She demonstrated good effort throughout the exam. Gait and station were normal; the claimant ambulated without the use of any assistive devices.

She had appropriate insight and judgment. Manual muscle strength testing was 5/5 throughout. Reflexes were symmetric at 2/4. There was no muscle atrophy, fasciculation, or fibrillation. The claimant was able to bend forward, squat, and heel and toe walk without any difficulty. The bilateral straight leg raise was unremarkable in both seated and supine positions. The claimant demonstrated a full range of motion of the cervical and lumbar spine, the bilateral shoulders, elbows, the hips, knees, and ankles. There were also complete movements of the bilateral wrists, hands, and fingers (Exhibit 4F).

> On August 27, 2015, the claimant underwent a primary stent placement of the left common iliac artery. The post-operative diagnosis was a left common iliac vein occlusion. She had left lower extremity edema (Exhibits 5F and 8F/l l).
>
> On September 10, 2015 and again on March 7, 2016, a left lower extremity duplex scan indicated deep and superficial veins with compressibility and respiratory phasicity. There was no evidence of deep vein or superficial venous thrombosis (Exhibit 7F/l-2).
>
> The claimant participated in a physical therapy to treat fibromyalgia from February 29, 2016 through April 21, 2016. This program included therapeutic exercises (Exhibit 9F).
>
> On March 9, 2016, the claimant returned to the office of Mark Moulton, MD, for the first time in several years. The claimant had had a lumbar fusion surgery of the L4-5 level and had done quite well afterward. The claimant now reported developing somewhat increased whole body pain, including back pain. Lumbar spine x-rays demonstrated a solid arthrodesis. There was some very mild spondylosis at the L3-4 level. Dr. Moulton recommended that the claimant start an organized therapy program to work on range of motion, flexibility, and strengthening (Exhibit 10F/1-2).
>
> On June 22, 2016, the claimant was taking Morphine [ER, 60 milligrams], Norco, Synthroid, and Viibryd. The claimant was ill appearing. Motor strength and tone were normal. There was a full range of motion of the lumbar spine. The claimant also had a normal movement of all extremities with fibromyalgia tender points present. The extremities had a trace to one edema bilaterally. There was a positive right Tinel's sign. Sensation was intact. Gait and station were normal (Exhibit 11F/2-4).
>
> On January 24, 2017, Dr. Moulton described the claimant as certainly holding her own. The claimant's biggest complaint was the fibromyalgia. Dr. Moulton indicated that he would see the claimant again if a back problem occurred (Exhibit 12F).
>
> On January 31, 2017, Dr. Parrett advised the claimant to continue taking medications. The claimant was advised to quit smoking as well (Exhibit 14F/l7).

(PageID.52-54).

## II.     The ALJ Properly Evaluated the Opinion Evidence

On February 9, 2016, Dr. Diane Parrett completed a form report regarding Plaintiff's functional limitations. (PageID.424-27). As detailed below, the doctor reported that Plaintiff was impaired to a greater degree than recognized by the ALJ. The ALJ, however, afforded only "partial weight" to Dr. Parrett's opinions. (PageID.55). Plaintiff argues that she is entitled to relief because the ALJ failed to provide good reasons for discounting her treating physician's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human*

9

*Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

Dr. Parrett reported that during an 8-hour workday, Plaintiff could sit for "about 4 hours" and stand/walk for "about 2 hours." (PageID.425). The doctor reported that Plaintiff required a sit/stand option and would need to take unscheduled work breaks approximately every 2 hours. (PageID.425-26). The doctor reported that Plaintiff could only "rarely" hold her head in a static position and could use her upper extremities to perform reaching activities no more than 20 percent of the workday. (PageID.426-27).

The ALJ discounted Dr. Parrett's opinions on the ground that such were inconsistent with the results of subsequent physical examinations as well as with Plaintiff's reported activities. (PageID.55-56). This conclusion is supported by substantial evidence as the ALJ's discussion of the evidence reveals. In support of her position, Plaintiff simply asks the Court to re-weigh the evidence and reach a different conclusion. As already noted, however, this is not permissible. In sum, the ALJ articulated good reasons, supported by the record, for discounting Dr. Parrett's opinion. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Dated: June 13, 2019                   /s/ Ellen S. Carmody
                                       ELLEN S. CARMODY
                                       U.S. Magistrate Judge